United States v. Kamkarian Appeal No. 22-2366 Mr. Green, whenever you're ready. Good morning. May it please the court, counsel. Terry Green on behalf of the Pejman Kamkarian. He seeks reversal of the district court denial of his motion to withdraw his guilty plea in a criminal case. We believe it was abuse of discretion of the district court of not allowing the withdrawal of the guilty plea. And we believe that we have just and fair reasons why he should be allowed to withdraw that plea. Now, we understand that the burden is high in this instance. A defendant has a high burden. There is a push to have finality in guilty pleas, that there is some finality that they should be entered into solemnly by defendants. And so, we accept that burden. Now, the standard in this is abuse of discretion and we think that in spite of the findings of the judge at the motion hearing, that we have sustained our burden. I believe that this case should best be framed in the issue is whether or not an individual who is in a mental health stabilization facility should be taken out of that facility and taken to federal court and enter into a plea that exposes them to decades, well, potential decade or so in prison. In this instance, he received 87 months. So, what about the fact, though, that the district court doesn't just sort of do this off the cuff. The district court has a forensic psychologist. Mental health problems come in many levels of severity and even though Mr. Kamkarian may have not been well off, the conclusion of the psychiatrist is he's able to understand these proceedings. He's not incompetent to enter the plea. Therefore, he should be held as people are to the representations he made at the plea period. So, the court seeks professional help. Anyway, what about that? Well, yes, that was one of the issues that was taken up at the day of the taking of the plea. If you look at the transcript, there was actually a division in there. They took a recess. Mr. Kamkarian says he was wanting to talk to the judge and she took that to be that he was wanting to talk to his attorney. So, there's about a five-minute break. But during this 19 minutes of when he entered this plea of guilty, that issue came up about getting a psychological evaluation. And after they finished the plea, then the issues came up that you were describing where he was to undergo further psychological evaluations. And as you read the transcript, it says in there that the probation officer, the pre-trial release officer, informs the court he's deteriorating quickly. Well, she doesn't go into the specifics, but the deterioration apparently was sufficient that he went into this stabilization unit and was placed in there for a 10-day period. And halfway through that first 10 days, he was taken to court. Now, if you read the report of the person who was running the stabilization unit that we attached to our motion, then she says what she saw on the day that the guy went there, he was not fit to be entering into these types of decisions. She had an employee of the stabilization unit drive him to federal court. Now, he may have been competent. You know, that's a standard do I know where I am and do I know what facility I'm in and what do I know what the charges are. But in this instance, we're talking about a man who at least had some objective determination that he was suicidal, that he had some type of ideation of perhaps harming himself. He was lamenting. He was greatly depressed. Are these the type of instances when we want to take a plea? Mr. Green, I understand your arguments here and I finished your opening brief and said this sounds terrible. But then I read the district judge's findings. And what I don't see in your brief, the opening brief or reply brief, is real engagement with those findings and the standard of review, which as you observe is very tough for you to meet. Yes, Your Honor. That would be an error on my part. But if I may direct to that issue, the judge says that in the colloquy of taking the plea that observed Mr. Kamkarian during this period of time and went through the factors of Rule 11, asked him questions that would go to the issue of whether or not he was fit to enter a plea. Have you taken any medicines today? Yes or no question. Have you consumed any alcohol today? Again, a yes or no question going to the issue of whether or not there might be something bothering his mental capacity. No question was put to him. I understand you're in the stabilization unit. Are you ready to make a plea here? Nothing was done other than the asking of the yes or no questions to which he was managed to answer yes or no appropriately, standing there next to his attorney, whom at least at the motion hearing says he felt pressured. So those were errors that I would have made in my briefing. Yes, I should have addressed those more to a great degree. But in this instance, again, I found no cases in the preparing of our brief. I saw no cases of the government, which they had a tremendous number of cases. But in no instances could I find someone who was taken out of a mental institution or mental facility, a stabilization, stabilizing them to be able to function, go into court and make a guilty plea. And I think it's because courts generally seek to evade doing things. So we're only asking in a limited instance that people don't be taken out of these facilities. Yes, the judge said that she saw, thought he was lying at the later part rather than at the time of the plea. That could be in part two because he was in the stabilization unit on the time of the plea. He was not in the stabilization unit at the time of the motion hearing. He was in jail. But we believe in the instance that we have here that he has presented or we have presented a fair and just reason why he should be allowed to withdraw his guilty plea. It's not for some broad reason, but it's for a very limited reason. You don't take people, eggshells if it were, out of facilities and have them make such an important decision. I'd like to reserve the balance of my time. Thank you. Of course. Thank you, Mr. Green. Mr. Liggins. Good morning, Your Honors. My name is Tom Liggins and I represent the United States on this appeal. I guess the first place I would like to start, I would just like to get into sort of the explaining the background of how the defendant's mental issue first came to light. And I think saying that he was taken out of a crisis stabilization unit, while technically correct, it doesn't get into he was there because of depression and anxiety over his legal case. That's reflected in the PSI, I believe in paragraphs 55 through 57, which sort of gives you a fuller picture of how that process came about. He relayed to the probation officer in this case, I think about a week before his change of plea was scheduled, that he was having mental issues and anxiety over his upcoming change of plea and that they were to the point that his probation officer said, well, we need to get you evaluated and we need to see what all you need. Ultimately, the defendant refused to be evaluated. He reported to the crisis center, but he refused to be evaluated until the court ordered him to at his change of plea hearing. So, what the court was aware of and what the probation office was aware of at the time of his change of plea is reflected in what's in paragraphs 55 through 57 of the second revised PSI. And it's also reflected at the close of the change of plea transcript. I believe it's between pages 11 and 16. The district court addresses the defendant after his change of plea and says, I understand you're resisting these efforts to be evaluated. You're resisting these efforts to get you treatment for these conditions, your mental, your depression and anxiety, and she ordered him to submit to the evaluation. So, can I ask you, she also, when all is said and done, basically says that she's going to rely on her own perception of his performance at the change of plea hearing, not on, you know, what comments made, which are disturbing comments, by the way, by these mental stabilization professionals. And she says, you know, I was there. I saw you. And yes, you're right. She does order that additional evaluation, but to what extent in this rather complex area do you think district courts should be entitled simply to rely on their own lay observations of a person, and to what extent do we have a situation where only professional opinions will do? I think we should always rely on a district, where the question is whether or not the plea was knowing and voluntary. I think this court has already got it exactly right. As I point out in my brief, this change of plea hearing, and I've probably done a thousand, this was just like 985 of them. I mean, he was standing closer than I am to you right now to the judge. I think in my brief, I made a record. He was 12 feet away from the judge. This was pre-COVID. He wasn't wearing a mask, and he was conversing with the court like I'm conversing with you now. And I take it we've basically dropped any language issue. Nobody mentioned that before. Counsel mentioned it in his brief as one of the grounds that the counsel at change of plea was ineffective. There was no language issue here. I mean, the district court denied the defendant's motion for an interpreter, which he filed after his change of plea, because he had conversed with everybody in perfect English that everyone could understand. And I guess I would like to get back to your honor's question. There's a very good reason that we don't base what a defendant says to his mental health professionals. We don't base the rule 11 standard on what he says to bystanders at the public defender's office that he meets. We don't base it on anything other than what is said in court, because that's under oath. And it's on a judge who is honed in on the issue of is this voluntary. Well, it's more than voluntary. I mean, if the judge had heard him saying things that for example, you know, he was seeing things in corners of the courtroom that weren't there or, I mean, there are some manifestations of mental illness that even a lay person can spot. But I guess what I'm worried about is that more subtle area where he seems to be okay, but there's really some synapse isn't really closing in his brain. And I think that, you know, it's why we require a colloquy. I mean, and there are a whole lot of different questions in that rule 11 colloquy that, I mean, the judge isn't just relying on is there anything affecting your ability to plead today. I mean, the whole thing plays into that. And this defendant was giving answers to the district court like I'm giving you now. And I think that given that we base what in the court and this court has established a standard and that actually the district court in this case went above that standard. Not only she could have relied, the district judge in this case could have relied on just the contradiction between what was said in the change of plea and the position he was taking in his motion. This court held a hearing and she made a specific finding that the defendant was lying about what happened at his change of plea proceeding. And I believe that's conclusive on the issues that the defendant is trying to raise today. And if there are no further questions, I will yield the rest of my time. Thank you. Mr. Green. In the instance that we have is described by counsel, he talks about, well, she, the district court did go through the factors, the rule 11 factors, and had the opportunity to see him from a distance of 12 feet and what have you. And what is that observation? Every answer that he had was yes, your honor, or no, your honor, or, and the issue came up about his speaking, is oftentimes he said my honor, not your honor, or as we used to say in our English, Farsi being his original language. But is that going to give us a window into what is actually going on here? As I did in my opening talk about, well, you ask questions specifically about alcohol or you ask specific questions about medications, but no questions were asked about the fact that had I not known that he'd been in the stabilization unit, it doesn't appear anywhere in the, or pretty much as far as I can recall, in the plea hearing. So, I think in an instance, when you know that you have a defendant that has come out of a hospital or come out of a facility, that some inquiry needs to be taken in this instance. Now, this is just some limited instance, not for a broad reversal of guilty pleas. We'd ask you to go ahead and find that the district court erred. Thank you. Thank you, Mr. Green. Mr. Green, I see that you were appointed in this case, so we appreciate your willingness to take on this case and your advocacy. Well, thank you You're very welcome. Okay, we'll take the case under advisement.